UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 2000 HEALTH AND WELFARE FUND, et al., | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 4:16 CV 1065 CDP ) |
| AGENCY FOR COMMUNITY TRANSIT, INC., | ) ) ) ) |
| Defendant. | ) |

# **MEMORANDUM AND ORDER**

This case arises out of a disagreement between an employer and an ERISA benefits plan about the meaning of certain language in a collective bargaining agreement relating to when a covered employee may opt out of employer-provided health coverage. The employer, defendant Agency for Community Transit, Inc. (ACT), claims that the specific terms of the operative CBA permit an employee to opt out at any time upon meeting two conditions: 1) furnishing the employer with written proof of insurance under another health plan, and 2) furnishing the employer with a written request not to be covered by the employer-provided health plan. The plaintiff Fund[1] and its trustees claim that the CBA must be read in

---
[1] Service Employees International Union Local 2000 Health and Welfare Fund.

conjunction with the Summary Plan Document, which states that any change in coverage can be made only during a period of open enrollment. Applying ordinary principles of contract law, I agree with the employer, ACT, that the terms of the CBA control in this case, and an employee may opt out of coverage at any time upon meeting the two conditions specified in the CBA. I will therefore grant ACT summary judgment in this action.

**Background**

The CBA at issue in this case was signed by ACT and the Service Employees International Union Local 1 on March 18, 2016, and was in effect from January 1, 2016, through December 31, 2017. (ECF #41-2.) The CBA governed the terms and conditions of employment for ACT's covered employees during this period, including the provision of health insurance. Article 14 of the CBA specifically required ACT to partially fund health insurance benefits for covered employees who did not opt out of the employer-provided health plan. The CBA's opt-out clause, § 14.6, provided as follows:

> If an employee can furnish the Employer with written proof that the employee is insured under another health plan, and the employee furnishes the Employer with a written request not to be covered under the Employer's health plan, then the Employer will pay that employee $100.00 per month in lieu of any payments toward the health plan as long as the affected employee would be eligible for a premium contribution from the Employer and proof of other coverage is maintained.

On April 7, 2016, ACT employee Janice Martin made a written request to

opt out of ACT's employer-provided health plan and submitted proof of alternative health insurance. ACT stopped contributing to the Fund for Martin in April 2016 and began paying her the $100 cash-in-lieu-of-benefit payments. On April 27, 2016, ACT employee Jeff McAleenan made a written request to opt out of ACT's employer-provided health plan and submitted proof of alternative health insurance. ACT stopped contributing to the Fund for McAleenan in May 2016 and began paying him the cash-in-lieu-of-benefit payments.

The Fund sued ACT, alleging that ACT remained obligated to pay contributions to the Fund on Martin's and McAleenan's behalf through the remainder of 2016. Specifically, the Fund claims that the employees' drop of coverage was improper because it was done outside an open enrollment period, which, the Fund claims, is the only time permitted under the Plan[2] for an employee to change coverage. The Fund points to language in the Plan that states that once an election for coverage is made during an open enrollment period, that election is "valid for one year and cannot be changed" except for what the Fund calls certain "qualifying events." The Fund alleges that because the employees' drop of coverage was improper under the Plan and they remained eligible for coverage, ACT remained obligated to pay contributions to the Fund on their behalf.

---

[2] The Plan maintained by the Fund and invoked in this litigation is the Open Access Plan, whose Plan Document and Summary Plan Description was amended and restated as of January 1, 2012. (ECF #41-5.)

Both parties move for summary judgment.

**Legal Standard**

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). I must view the facts in the light most favorable to the nonmoving party, "but only 'if there is a genuine dispute as to those facts.'" *RSA 1 Ltd. P'ship v. Paramount Software Assocs., Inc.*, 793 F.3d 903, 906 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042).

The parties agree that the relevant facts are not in dispute, but each argues that the law as applied to those facts requires that judgment be entered in its respective favor. For the following reasons, ACT is entitled to judgment as a matter of law on the undisputed facts of this case.

**Discussion**

Under Section 515 of ERISA,

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Under Section 515, therefore, the Fund may collect only those

contributions that ACT is contractually obligated to pay. *Carpenters Fringe Benefit Funds of Ill. v. McKenzie Eng'g*, 217 F.3d 578, 582 (8th Cir. 2000). *See also DeVito v. Hempstead China Shop, Inc.*, 38 F.3d 651, 654 (2d Cir. 1994) (Fund's trustees "are not entitled to enforce a nonexistent contractual obligation.").

ERISA plans and CBAs are construed according to federal common law, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985); *Harris v. The Epoch Grp., L.C.*, 357 F.3d 822, 825 (8th Cir. 2004), and are interpreted according to ordinary principles of contract law. *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015). "Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *Id.* (internal quotation marks and citation omitted). "[T]he written agreement is presumed to encompass the whole agreement of the parties." *Id.* at 936. "When the intent of the parties is unambiguously expressed in the contract, that expression controls, and the court's inquiry should proceed no further." *Id.* at 938 (Ginsburg, J., concurring). Accordingly, a court may consider extrinsic evidence to determine the intention of the parties only if the contract is ambiguous. *M & G Polymers*, 135 S. Ct. at 938 (Ginsburg, J., concurring).

The parties contend that there is no ambiguity in this case that would require me to look outside the relevant documents to interpret contractual terms. I agree.

Therefore, despite the parties' submission of extrinsic evidence, I do not consider it.

The CBA at issue here was in effect from January 1, 2016, through December 31, 2017. It purports to set forth "all terms agreed upon" by ACT and the Union; expressly states that its provisions "constitute the complete and total collective bargaining contract . . . with respect to . . . benefits"; and requires that any additions, detractions, alterations, amendments, or modifications to the CBA be "in writing signed on behalf of the parties[.]" The CBA also expressly "creates no obligations, rights, or duties" beyond its terms and specifies that its provisions "shall prevail between [ACT] and the Union with respect to . . . benefits[.]" (ECF #41-2, CBA Preamble.)

With respect to health benefits, § 14.1 of the CBA provides that ACT employees are eligible for health insurance that is partially paid for by ACT. It does not identify any health plan or insurance provider.[3] Under § 14.6, an employee may opt out of employer-provided health coverage upon meeting two conditions: 1) furnishing ACT with written proof of insurance under another health plan, and 2) furnishing ACT with a written request not to be covered by the employer-provided health plan. If an employee meets these conditions, § 14.6

---

[3] This is notably different from Article 16 of the CBA governing pensions, which specifically directs ACT to participate in and contribute to an identified pension plan, "the Greater St. Louis Service Employees Pension Trust 401(k) Plan."

directs ACT to "pay that employee $100.00 per month in lieu of any payments toward the health plan[.]" No clause in the CBA requires an employee to wait until an open enrollment period to opt out of employer-provided coverage; nor does the CBA require ACT to wait until an open enrollment period to stop making contributions on behalf of an employee who satisfies § 14.6's opt-out conditions.[4]

The Fund argues that the CBA creates a contractual duty for ACT to contribute to the Fund and, because the Fund is governed by the Trust Agreement and the Summary Plan Description (SPD), ACT is bound by the terms of those documents, including the SPD's statement that no changes can be made to an employee's coverage outside an open enrollment period. Citing a Union representative's affidavit, the Fund further contends that "it was expressly understood" during the negotiation of the CBA that ACT would be bound by the Fund's Trust Agreement, which includes the Fund's power to adopt benefit plans, including the Plan at issue here described in the SPD[5] – further bolstering the Fund's position that ACT is bound by the terms of the SPD that permit changes to

---

[4] This lack of limitation is again notably different from Article 16, which imposes limitations on when employees may change their contributions to the identified 401(k) Plan. *See Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738, 744 (7th Cir. 1996) ("[W]hen parties to the same contract use such different language to address parallel issues . . . , it is reasonable to infer that they intended this language to mean different things.") (cited approvingly in *Allied Sales Drivers & Warehousemen, Local No. 289, Int'l Bhd. of Teamsters v. Sara Lee Bakery Grp.*, 746 F.3d 342, 348 (8th Cir. 2014)).

[5] ECF #39, Pltf.'s Memo. in Supp. of Sum. Judg., at p. 3, n. 1 (citing paras. 5 & 6 of Murphy Affid., ECF #39-1 at p. 26).

Plan coverage only during open enrollment periods. For the following reasons, the Fund's arguments fail.

As an initial matter, I question whether ACT is even required to make contributions of any kind to the Fund. Although the CBA requires ACT to contribute to an employee's health insurance premium, nothing in the CBA requires the Fund to be the recipient of those contributions. Nothing in the CBA obligates it to do so. The Trust Agreement and Addendum submitted by the parties predate the CBA,[6] and the CBA's Preamble unequivocally states that any addition, amendment, or modification to the CBA must be in writing and signed by all parties. Nothing before the Court shows that any written additions, amendments, or modifications to this CBA were made. Further, the Trust Agreement applies to only those employers whose CBA or other written obligation expressly binds them to the Trust.[7] I see no writing that binds ACT to the Trust during the period covered by the CBA relevant to this litigation. To the extent the Fund submits the affidavit of a Union representative indicating an "understanding" during

---

[6] The Trust Agreement was entered into effective July 1, 2009, and was amended three times between September 2009 and September 2015 on matters unrelated to this litigation. (ECF #41-4, Trust Agreement.) The Addendum was executed by ACT and the Fund on January 12, 2010, and applied to the CBA that was then in effect. (ECF #41-3, Addendum.) The term of that CBA expired December 31, 2012, and nothing shows that ACT's obligations under the Addendum extended beyond the expiration of that CBA. *See M & G Polymers*, 135 S. Ct. at 937 (recognizing "traditional principle that 'contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement'") (quoting *Litton Fin. Printing Div., Litton Bus. Sys., Inc. v. NLRB*, 501 U.S. 190, 207 (1991)).

[7] *See* ECF #41-4, Trust Agreement, art. III, § 3.02.

negotiations that ACT would be so bound, I may not consider this extrinsic evidence given the unambiguous terms of the documents at issue as well as the CBA's express statement that its provisions constitute the entirety of the agreement regarding benefits.

Regardless, assuming arguendo that ACT was bound to the Fund through its relationship with the Union, the plain language of the Plan does not limit termination of coverage to open enrollment periods. The ELIGIBILITY RULES of the Plan contain a clause titled "When You Become Covered," which advises the employee:

> You will be given an opportunity each year during an open enrollment period in which You may enroll Yourself and Your Eligible Dependents in the Plan if not already enrolled. Your election is valid for one year and cannot be changed except for certain family events or loss of coverage events listed in the "Special Enrollment Rights" section of this Summary Plan Description.

(ECF #41-5, SPD at p. 16.) Under the "Special Enrollment Provision," an employee is given a "special opportunity" to "enroll for coverage" outside the open enrollment period in limited circumstances where s/he suffers a loss of other health coverage or acquires a new dependent. (*Id.* at pp. 22-23.) The Fund argues that employees may change their coverage outside an open enrollment period only if they meet one of these excepted circumstances.[8] These exceptions apply, however,

---

[8] In its memoranda, the Fund refers to these circumstances as "qualifying events." Under the Plan, however, "qualifying events" are only those that make an employee eligible for coverage

only for purposes of enrollment in the Plan.

It is not disputed that neither the "When You Become Covered" clause nor the "Special Enrollment Provision" contains any exception to the open enrollment period for termination of coverage. However, I am not limited to only these clauses of the Plan in determining the question before me. *Barker v. Ceridian Corp.*, 122 F.3d 628, 637 (8th Cir. 1997) (when interpreting terms of an ERISA plan, court must look at the plan as a whole and give meaning to all clauses where possible); *see also Shaw v. Prudential Ins. Co. of Am.*, 566 F. App'x 536, 539 (8th Cir. 2014). In addition to these clauses, the ELIGIBILITY RULES of the Plan contain another clause titled "Termination of Coverage" that sets out six circumstances upon which an employee's coverage under the Plan will be considered terminated. (ECF #41-5, SPD at pp. 17-18.) Notably, this clause does not limit termination of coverage to only open enrollment periods and indeed specifically states that coverage terminates "on the earliest" of any of the listed circumstances. In short, this clause provides for termination of coverage outside of

---

under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA). (*See* ECF #41-5 at pp. 25-27.) Because COBRA is not implicated in this cause of action, the Fund's reference to "qualifying events" is misplaced. The Fund also relies on an October 2015 memo sent to Union employees regarding the open enrollment period and instructing that enrollment choices remain in effect for 2016 unless a "qualifying event" occurs, such as marriage, divorce, etc. (*See* ECF #39-1 at p. 28.) This memo refers the employees to their respective CBAs and the SPD for details regarding monthly contributions and health information. I do not find this memo to constitute a formal written document containing terms of a welfare benefit plan as contemplated by ERISA. *See United Paperworkers Int'l Union, AFL-CIO, CLC v. Jefferson Smurfit Corp.*, 961 F.2d 1384, 1386 (8th Cir. 1992). Nevertheless, the memo does not change the terms of the Plan and therefore does not affect my analysis.

open enrollment periods without the requirement of an excepted "certain family event" or "loss of coverage event." Accordingly, reading this clause consistently with the other clauses of the ELIGIBILITY RULES, *see Barker*, 122 F.3d at 637-38, it is apparent that the open enrollment period and its exceptions do not apply to when an employee's coverage terminates. Instead, under the plain terms of the Plan, an employee's coverage terminates upon the satisfaction of certain criteria set out in the "Termination of Coverage" clause.

The CBA here merely provides another circumstance by which an employee's Plan coverage may be terminated, that is, by an employee's opting out of coverage as provided by § 14.6 of the CBA. This additional termination event does not conflict with the Plan and, even if it did, the CBA controls in the circumstances of this case. (ECF #41-2, CBA Preamble.) *See Banta Corp., v. Graphic Commc'ns Int'l Union,* No. 04-1022, 2006 U.S. Dist. LEXIS 853 at * 14, 2006 WL 44013 (D. Minn. Jan. 6, 2006) (An "[i]nterpretation of the parties' agreements requires an initial determination as to which contracts control."); *In re AMR Corp.*, 508 B.R. 296, 319 (Bankr. S.D.N.Y. 2014) ("where a plan and CBA conflict, the bargained-for CBA should control over the employer-drafted plan documents."). *See also United Food & Commercial Workers v. Super Fresh Food Mkts. Inc.*, No. CIV. 04-1226 (RMB), 2008 WL 3874304, at *23 (D.N.J. Aug. 19, 2008). Because the Plan does not limit the termination of an employee's health

coverage to an open enrollment period, and no exception to the open enrollment period is required to terminate coverage, permitting an employee to terminate coverage outside an open enrollment period does not run afoul of any of the Plan's terms.  Therefore, Martin and McAleenan effectively terminated Plan coverage upon their satisfaction of § 14.6 of the CBA.

## Conclusion

Applying ordinary contract principles in the circumstances of this case, an ACT employee may opt out of coverage at any time upon meeting the two conditions specified in § 14.6 of the CBA and is not required to wait until an open enrollment period to do so.  Further, upon an employee's meeting of the conditions set out in § 14.6, ACT is not required to make any payments toward its health plan on behalf of that employee, as long as that employee is eligible for a premium contribution and proof of other coverage is maintained.  Therefore, upon employees Martin's and McAleenan's written request to opt out of ACT's employer-provided health plan and submission of proof of alternative health insurance, ACT was relieved of its obligation to make contributions to the employer-provided health plan on Martin's and McAleenan's behalf.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Agency for Community Transit, Inc.'s Motion for Summary Judgment [36] is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff Service Employees International Union Local 2000 Health and Welfare Fund and its trustees' Motion for Summary Judgment [38] is **DENIED.**

A separate judgment in accordance with this Memorandum and Order is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of January, 2018.